**William LANGTON, Plaintiff, Appellant,**

v.

**Louis BERMAN, et al., Defendants, Appellees.**

**No. 80–1565.**

United States Court of Appeals, First Circuit.

Submitted Feb. 13, 1981.

Decided Dec. 29, 1981.

William Langton pro se.

Michael C. Donahue, Sp. Asst. Atty. Gen., and Judy Meyers, Counsel, Dept. of Correction, Boston, Mass., on brief for defendants, appellees.

Before COFFIN, Chief Judge, ALDRICH, Circuit Judge, WYZANSKI, Senior District Judge.*

COFFIN, Chief Judge.

William Langton, a Massachusetts state prisoner, brought suit against certain named Department of Corrections personnel alleging that their conduct of a disciplinary hearing at which he was found guilty of planning to escape violated his "rights under the United States Constitution".[1] The district court dismissed his *pro se* complaint without opinion for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Langton appeals.

The facts appear to be as follows. On October 25, 1977, appellant was given written notice, in the form of a disciplinary report, that he was charged with two major disciplinary offenses: possession of a hacksaw blade and planning to escape. The allegation was based in large part on informant information,[2] although the informant(s)' statement that appellant possessed a hacksaw blade was not confirmed by a search of his cell. Appellant was immediately transferred to the maximum security segregation unit of the prison where he was incarcerated. His repeated attempts to obtain information from prison officials about the source(s) of the charges against him were unsuccessful.

The disciplinary hearing was begun before the three member Disciplinary Board on November 1, 1977, at which time appellant requested a continuance so that he might obtain counsel. His attorney then made written request for a number of witnesses, some of whom were other inmates and some, prison officials. On November 8, 1977, the hearing was reconvened. The only evidence against appellant was testimony from the corrections officer who wrote the disciplinary report. Neither appellant nor his attorney was permitted to be present during the reporting officer's testimony. At the conclusion of this testimony, when appellant and his counsel had returned to the room, the Board stated that it found the informant information to be reliable.[3] Appellant's counsel attempted to

---

* Of the District of Massachusetts, sitting by designation.

1. Langton filed his complaint jointly with another inmate, Alan Griswold, who was charged with the same offenses. Their disciplinary hearings were separate. Griswold has since died; Langton is proceeding alone *pro se* on the appeal. This opinion deals only with the allegations about Langton's disciplinary hearing.

  The defendants-appellees are certain named Department of Corrections personnel all employed at MCI Bridgewater: the superintendent; the deputy superintendent; the three members of the disciplinary board; two corrections officers; one social worker; the charging officer; the investigating officer; two other corrections officers; a deputy; and unnamed informant(s).

2. The disciplinary report read:
  "On several occasions I have received information some of which has come from multiple informants sources [sic] stating that inmate William Langton BX1616 and Allen [sic] Griswold BX2451 were planning an escape from 'B' Annex. They allegedly possess escape material, a hacksaw blade. More recent information that stated that this escape plan is to take place in the very near future. [sic]"
  It was signed by the reporting officer.

3. Massachusetts Department of Corrections regulation § 430.15(a)(2) provides that infor-

question the reporting officer about the informant sources but the Board ordered the officer not to answer. No informant appeared at the hearing. Nor did the Board have before it any written statements from any informant. Appellant's counsel tried to enter into evidence twelve inmate affidavits, but the Board refused on the ground that the affidavits were invalid.

One week later, the Board resumed the hearing. At this time, counsel renewed his request to submit the affidavits.[4] The Board refused to allow the affidavits into evidence on the grounds that they were taken under duress and that "inmates will sign anything". The Board also refused to allow a number of the prison officials and inmates whom appellant had requested as witnesses. No reason was given for refusing to call four of the officials but seven inmates were not called on the ground that it would take too much time. The Board did permit testimony from three inmates and one prison official. The official who had searched Langton's cell testified that he found no escape material or hacksaw blade in the cell. The inmates testified that the affidavits of the other inmates were freely given, and that the two charged prisoners were close friends who talked very little with other inmates. Appellant also testified before the Board on his own behalf.

The Board found appellant guilty of planning to escape but innocent of possession of the hacksaw blade. He was sentenced to 15 days of isolation and the loss of all privileges, including good time credits. Appellant appealed the sanction to the prison superintendent, who referred the case to the Department of Corrections for review. The decision of the Disciplinary Board was affirmed, but not until appellant had already served his time in isolation.

In the course of this extremely attenuated proceeding in the district court, spanning three years, not only was the complaint amended but various other papers and memoranda were filed in connection with motions to dismiss and a temporary restraining order, as well as this appeal. Some grounds for relief alleged in the original pleadings have not been pursued, while other grounds that appear in briefs do not seem to have appeared earlier in pleadings. Although counsel served during the disciplinary hearing, most of the papers have been drafted by appellant and his fellow inmate Griswold. Accordingly, with some difficulty, we identify and discuss the issues that seem to us both preserved and the more substantial.

At the outset, we reject appellant's claim that the disciplinary report was issued in order to suppress his legal activities. He cites *McDonald v. Hall*, 610 F.2d 16 (1st Cir. 1979), in support of this argument. However, this claim was not raised in the district court, where he listed his legal activities only in connection with his petition for an order restraining his transfer to a federal prison. "[A]n issue not presented to the trial court cannot be raised for the first time on appeal ... unless a gross miscarriage would occur." *Johnston v. Holiday Inns, Inc.*, 595 F.2d 890, 894 (1st Cir. 1979).

■ Appellant repeatedly asserts that because the disciplinary hearing subjected him to the loss of good time credits, he was entitled to due process under *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). We agree. The question is whether the procedures accorded to appellant meet the minimum standards required by that case.

---

mant information may be presented out of the presence of the inmate if *inter alia* the Board makes a finding that the informant and the information are reliable.

4.  The affidavits were from twelve of the eighteen inmates in appellant's annex and allegedly stated in essence that neither of the charged prisoners had ever discussed escape with any

member of their unit. When appellant and Griswold are added to the twelve from whom affidavits were obtained, there would have been only four inmates unaccounted for. Apparently, appellant assumed that one or more of the remaining four inmates must have been the informant(s), and wished to show that none of the four were reliable.

In *Wolff v. McDonnell*, the Court required that before an inmate may be deprived of a statutorily created right to good time credits, he must be provided with more than a hearing before a disciplinary committee. He must also be given advance written notice of the claimed violation of the disciplinary rules, and a written statement by the fact finders which includes the evidence relied upon and the reasons for the disciplinary action taken, *id.* at 563, 94 S.Ct. at 2978, or, if institutional safety requires the omission of certain evidence, a statement indicating the fact of such omission. *Id.* at 565, 94 S.Ct. at 2979. The Court also expressed "the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 566, 94 S.Ct. at 2979. In recognizing this right, however, it also recognized that prison officials must have the necessary discretion to determine what the institutional concerns require in each set of circumstances. Finally, the Court concluded that due process does not require that the inmate be permitted to cross-examine witnesses or be provided with counsel.

▮ In this case appellant was given written notice in the form of the disciplinary report. The hearing itself took place on parts of three days. Although a written statement of evidence relied upon or omitted for security reasons does not appear in the record before us, it is obvious from the nature of some of appellant's complaints that he was aware of the critical nature of informant information. Appellant's principal claims are that he was denied opportunity to present evidence and to test the reliability of evidence presented against him.

Appellant challenges the Disciplinary Board's refusal to allow appellant to call additional witnesses and its rejection of a dozen inmate affidavits. As for the witnesses who were allowed to testify, we have noted that one prison official reported on his fruitless search of appellant's cell and

three inmates testified that the affidavits that appellant wanted to offer into evidence, allegedly stating that neither appellant nor Griswold had ever discussed escape with other inmates, were freely given. There was no suggestion that the four officials and seven inmates who were not allowed to be called would have added testimony on any additional issues. The Board's ruling was within "the necessary discretion [of prison administrators] to keep the hearing within reasonable limits", *Wolff v. McDonnell, supra*, 418 U.S. at 566, 94 S.Ct. at 2979. *See also Hurney v. Carver*, 602 F.2d 993, 995 (1st Cir. 1979).

The affidavits were excluded from evidence on the grounds that duress infected their execution and that "inmates will sign anything". The thrust of the affidavits was, while technically relevant, essentially negative (i.e., evidence of the non-observation of an occurrence) and of slight significance. Moreover, it stretches credulity to expect an inmate to subscribe a document attesting to his having discussed escape plans with a fellow inmate. Here again the Board was acting within its discretion. Quite another situation, of course, would have been presented if the rejected witnesses and affidavits had involved, for example, eyewitness accounts in an assault prosecution that the accused inmates had struck a blow only in self defense.

▮ Appellant also raises a number of claims concerning the Massachusetts Department of Corrections regulations which apply to disciplinary hearings. In his amended complaint, he alleges that various regulations are unconstitutional on their face in that, for example, the preponderance of evidence standard is not incorporated in a regulation concerning a factual finding and several aspects of the regulations present double jeopardy problems. None of these claims has any merit. They fail to appreciate the essential differences between a disciplinary hearing and a criminal trial. *See Wolff v. McDonnell*, 418 U.S. at 556, 94 S.Ct. at 2974.

▮ Finally, appellant advances several claims based on the use of informant infor-

mation. He argues that he should have been in the hearing room when the corrections officer who had written the disciplinary report testified, that he should have been entitled to cross-examine that officer, and that he should have been allowed to examine the informant or at least see a copy of his statement. Under *Wolff* appellant has no right to cross-examination, and his rights to confront his accusers and to have full access to all evidence are left to the discretion of state prison officials. *Wolff v. McDonnell, supra*, 418 U.S. at 567–69, 94 S.Ct. at 2980–2981.

In addition, appellant alleges that the only indication of the reliability of the informant was the conclusory finding of the Board in accordance with Massachusetts Department of Corrections regulation § 430.15(a)(2). *See* n.3, *supra*. Two years prior to the disciplinary hearing in this case, in *McLaughlin v. Hall*, 520 F.2d 382 (1st Cir. 1975), we recognized the problem of accommodating institutional requirements to the need to afford some protection against arbitrary or vindictive actions by prison officials stemming from unreliable unidentified or even nonexistent informants. Taking our cue from *Wolff* we concluded that "At least for the present, courts should await the results of efforts by prison officials" to devise such an accommodation. 520 F.2d at 385.

We cannot say that by November of 1977, when appellant's disciplinary hearing took place, sufficient time had elapsed to justify imposing constitutionally required ground rules regarding the use of informant reports in prison proceedings. Since that time, however, our attention has been directed to a number of unreported and reported district court opinions that recognize the need to devise some way of checking on the reliability of unidentified prison informants. Among the latter are *Rinehart v. Brewer*, 483 F.Supp. 165 (S.D.Iowa 1980); *Bartholomew v. Reed*, 477 F.Supp. 223, 233 (D.Or.1979); *Finney v. Mabry*, 455 F.Supp. 756 (E.D.Ark.1978). Differing somewhat in their approaches, all are agreed that an unexplained conclusory assertion of reliability does not satisfy due process.

We do not, by citing these cases, endorse all that is said in the opinions and, indeed, we may question whether some does not exceed *Wolff*'s requirements. The present proceeding occurred only shortly after our reminding the Massachusetts prison authorities of *Wolff* in *McLaughlin v. Hall*, 520 F.2d 382 (1st Cir. 1977), and what they may have developed since by way of regulations we do not know. We continue to advise them to follow *Wolff*'s mandate to devise regulations to assure that the disciplinary board's procedure is adequate to enable it reasonably to conclude that any confidential information upon which it acted was reliable. We say this, however, without committing ourselves as to what must be open for our review.

*Affirmed.*