March 30, 1993
 [NOT FOR PUBLICATION]

 UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT

 

No. 92-1927
No. 91-1928 

 RICHARD A. STREET,

 Plaintiff, Appellant,

 v.

 PAUL RAKIEY, ET AL.,

 Defendants, Appellees.

 

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Edward F. Harrington, U.S. District Judge]
 

 

 Before

 Breyer, Chief Judge,
 
 Selya and Cyr, Circuit Judges.
 

 

Richard A. Street on brief pro se.
 
Nancy Ankers White, Special Assistant Attorney General, and
 
Catherine A. Arnold, Counsel, Department of Correction, on brief for
 
appellees.

 

 

 Per Curiam. Plaintiff Richard Street, an inmate at MCI-
 

Cedar Junction in Massachusetts, was charged in 1990 with two

disciplinary offenses. After conducting separate hearings,

prison officials in each instance found plaintiff guilty and

imposed a sanction of isolation time. Plaintiff thereafter

filed these pro se actions under 42 U.S.C. 1983, alleging

that the two disciplinary hearings suffered from assorted due

process violations. He requested relief in the form of

damages and the removal of the offenses from his record.

Named as defendants were the prison superintendent and other

correctional officials. In both cases, over plaintiff's

opposition, the district court granted defendants' motion to

dismiss under Fed. R. Civ. P. 12(b)(6). Plaintiff now

appeals. I.

 Plaintiff advances the following factual allegations.1

Appeal No. 92-1927 involves an incident on June 18, 1990 in

which plaintiff is alleged to have destroyed a light fixture.

William Cabino, the reporting staff person, prepared a

disciplinary report stating as follows: (1) at 6:55 a.m.,

Cabino was directed to remove plaintiff from a security cell

 

1. The factual allegations are drawn from plaintiff's
verified complaints and the exhibits attached thereto (which
consist of the records of the disciplinary hearings). Such
exhibits are considered part of the complaint, see Fed. R.
 
Civ. P. 10(c), and may properly be reviewed when evaluating a
motion to dismiss under Rule 12(b)(6). See, e.g., Hamilton
 
v. O'Leary, 976 F.2d 341, 343 (7th Cir. 1992); O'Brien v.
 
DiGrazia, 544 F.2d 543, 545 n.1 (1st Cir. 1976), cert.
 
denied, 431 U.S. 914 (1977).
 

"due to his disruptive behavior"; (2) upon entering the cell,

he noticed that a lighting fixture had been broken; and (3) a

subsequent search uncovered a five-inch piece of metal

located under a mattress and a "large piece of glass" located

under the toilet, both of which "apparently came from the

lighting fixture." Plaintiff was charged with four code

offenses under 103 C.M.R. 430.24 (1987), including

possession of a weapon and willful destruction of state

property. 

 At the disciplinary hearing, which was held on June 28,

1990, plaintiff pled not guilty by reason of insanity. In

his complaint, he alleges that he submitted a written request

for two witnesses--Cabino and Dr. Navaras, a prison

psychiatrist--but that a correctional official (Lt. Ayala)

tore up the witness form in plaintiff's presence. The record

of the hearing contains a partial reference to this matter,

explaining the denial of plaintiff's request for witness(es)

as follows:

 Request for witness Dr. Navaras denied in
 accordance with CMR 430.11(4).[2] Failed to
 submit witness form. Inmate Street claimed Lt.
 Ayala tore it up. Lt. Ayala states he never tore
 it up.

 

2. Under 103 C.M.R. 430.11(1), an inmate is to be served
with a "request for witness form" within twenty-four hours of
the designation of the offense as a major matter. Section
430.11(4) in turn provides that an inmate's "failure to
submit a request for ... witness form may, in the discretion
of the disciplinary board chairperson, constitute a waiver of
the inmate's rights to call witnesses."

 -3-

The record also contains a notation that plaintiff did not

request Cabino's presence. Admitted into evidence were

Cabino's disciplinary report and the pieces of metal and

glass recovered from the cell. Based on such evidence, the

disciplinary board found plaintiff guilty of both possessing

a weapon and destroying property. He was given a sanction of

fifteen days in isolation on each charge, for a total of

thirty days. Plaintiff appealed the matter to the

superintendent, claiming that his so-called "disruptive

behavior" had in fact been a suicide attempt, that he

suffered from "severe mental illness," and that he should be

transferred to a hospital. Plaintiff alleges that his appeal

was denied without explanation.

 Appeal No. 92-1928 involves an unrelated incident which

allegedly occurred one day later. A disciplinary report

prepared by staff person John Lopes stated: "On 6/19/90 ...,

this officer did see Inmate R.A. Street run from the Mental

Health office to the Hospital ward grill and spit on Inmate

John Debella ...." Plaintiff was subsequently charged with

disruptive conduct and "assaulting ... another person with

any offense against his person." 103 C.M.R. 430.24(18).

At a disciplinary hearing held on July 5, 1990, plaintiff

again pled not guilty by reason of insanity, adding

(according to the hearing record) that he had been at the

health unit to see a psychiatrist due to an episode of mental

 -4-

illness, and that he did not recall the incident. In his

complaint, plaintiff alleges that he requested two witnesses-

-Lopes and Dr. Navaras. The hearing record indicates that

Lopes' presence was initially requested but was later waived

by plaintiff (an assertion plaintiff denies in his

complaint). The disciplinary board denied the request to

call Dr. Navaras on the ground that "witness was not present

at the incident." Based on Lopes' written report, the

disciplinary board found plaintiff guilty and imposed a

sanction of fifteen days isolation. On appeal to the

superintendent, plaintiff argued that he had had a "psychotic

episode ... I was hallucinating and thought [Debella] was a

devil about to attack me, so I spat on him to break his evil

spell." This appeal, according to the complaint, was also

denied without explanation.

 II.

 In his pair of complaints, plaintiff advanced nearly

identical challenges to these two disciplinary proceedings.

He argued that the following due process violations occurred

in each instance: (1) inadequate notice of the charges was

provided; (2) he was denied the right to call and cross-

examine witnesses; (3) the conviction was not based on

substantial evidence; (4) the board failed to reach a finding

after the close of the evidence; and (5) no reasons were

provided for the denial of his appeal. He charged that

 -5-

imposing multiple sanctions for a single act of misconduct

violated double jeopardy. He argued that the board

contravened "common law" by (1) basing its findings on

unsupported written testimony and (2) failing to explain its

credibility findings. And he contended that each incident

was attributable to the negligent supervision of defendants--

conduct which in No. 92-1927, at least, amounted to cruel and

unusual punishment. The district court found that none of

these allegations presented a federal claim cognizable under

42 U.S.C. 1983. 

 Appellate review of a dismissal under Rule 12(b)(6) is

plenary. See, e.g., Miranda v. Ponce Federal Bank, 948 F.2d
 

41, 44 (1st Cir. 1991). We must accept all well-pled factual

allegations as true and draw all reasonable inferences

therefrom in plaintiff's favor. See, e.g., Leatherman v.
 

Tarrant County Narcotics, Etc. Unit, 61 U.S.L.W. 4205, 4206-
 

07 (U.S. March 3, 1993); Roth v. United States, 952 F.2d 611,
 

613 (1st Cir. 1991); Dartmouth Review v. Dartmouth College,
 

889 F.2d 13, 16 (1st Cir. 1989). In addition, a pro se

complaint is held to "less stringent standards than formal

pleadings drafted by lawyers" and can only be dismissed if

"it appears 'beyond doubt that the plaintiff can prove no set

of facts in support of his claim which would entitle him to

relief.'" Haines v. Kerner, 404 U.S. 519, 520 (1972) (per
 

curiam) (quoting Conley v. Gibson, 355 U.S. 41, 45-46
 

 -6-

(1957)); accord, e.g., Estelle v. Gamble, 429 U.S. 97, 106
 

(1976).

 Our task is to determine not whether the disciplinary

hearings comported in every detail with the state

regulations, but whether they were consistent with the

"minimal safeguards afforded by the Due Process Clause of the

Fourteenth Amendment." Ponte v. Real, 471 U.S. 491, 495
 

(1985).3 "Prison disciplinary proceedings are not part of a

criminal prosecution, and the full panoply of rights due a

defendant in such proceedings does not apply." Wolff v.
 

McDonnell, 418 U.S. 539, 556 (1974). As outlined by the
 

Court in Wolff, the applicable constitutional safeguards
 

include the following: providing "written notice of the

charges" to the inmate at least 24 hours before the hearing,

id. at 564; allowing the inmate "to call witnesses and
 

present documentary evidence in his defense when permitting

him to do so will not be unduly hazardous to institutional

safety or correctional goals," id. at 566; and, should a
 

finding of guilt be reached, providing "a written statement

by the factfinders as to the evidence relied on and reasons

for the disciplinary action," id. at 564 (quotation omitted);
 

accord, e.g., Superintendent, Massachusetts Correctional
 

 

3. It is clear that the loss of liberty entailed in
isolation time suffices to trigger constitutional safeguards.
See, e.g., Wolff v. McDonnell, 418 U.S. 539, 571 n.19 (1974);
 
Smith v. Mass. Dep't of Correction, 936 F.2d 1390, 1399 (1st
 
Cir. 1991). 

 -7-

Institution v. Hill, 472 U.S. 445, 454 (1985); Smith v.
 

Massachusetts Dep't of Correction, 936 F.2d 1390, 1398 (1st
 

Cir. 1991).

 III.

 Few of plaintiff's claims require extended comment. His

contention that he received inadequate notice of the charges

is entirely conclusory. The hearing records indicate (and

plaintiff does not dispute) that he was afforded at least 24

hours advance notice. In particular, he does not dispute

that he received copies of the disciplinary reports in

advance, in which the charges were adequately described.

Plaintiff likewise presents no cognizable claim in contending

that defendants violated double jeopardy by imposing multiple

punishments for a single act of misconduct. As we said in

rejecting an analogous double jeopardy contention in Langton
 

v. Berman, 667 F.2d 231 (1st Cir. 1981), this argument
 

"fail[s] to appreciate the essential differences between a

disciplinary hearing and a criminal trial." Id. at 234;
 

accord, e.g., United States v. Rising, 867 F.2d 1255, 1259
 

(10th Cir. 1989); see generally Breed v. Jones, 421 U.S. 519,
 

528 (1975) ("jeopardy describes the risk that is

traditionally associated with a criminal prosecution"). 

 Plaintiff's challenge to the sufficiency of the evidence

is clearly meritless. It is plain that the board's findings

were supported by "some evidence in the record"--the standard

 -8-

of evidentiary sufficiency mandated by the Due Process

Clause. Hill, 472 U.S. at 454. Nor has he stated a claim
 

with respect to (1) the board's consideration of the evidence

or (2) its description of the evidence on which it relied.

The Wolff Court held that "confrontation and cross-
 

examination" are not "generally required" in this context.

418 U.S. at 568. Consequently, the board's reliance on the

written disciplinary reports was proper, particularly since

each report contained an eyewitness account. In explaining

its findings, the board indicated that it relied on "the

eyewitness testimony as recorded in the officer's report" in

each case and, in No. 92-1927, on the physical evidence as

well. Such summary explanations have been deemed sufficient

in other cases (depending on the facts presented). See,
 

e.g., Forbes v. Trigg, 976 F.2d 308, 318-19 (7th Cir. 1992),
 

cert. denied, 61 U.S.L.W. 3456 (Feb. 22, 1993). They were
 

clearly adequate under the circumstances here. The evidence

at the hearings was straightforward. And rather than

attempting to controvert the central factual allegations

underlying the charges, plaintiff sought to defend himself by

citing the collateral issue of his mental status.4 For the

 

4. Plaintiff's challenge to the superintendent's alleged
failure to explain his reasons for denying the appeals
similarly falters. No such obligation is imposed by the
state regulations. See 103 C.M.R. 430.18. And we find no
 
such obligation as a constitutional matter, given that the
board adequately explained its findings.

 -9-

same reason, no issue of credibility was presented as to

whether plaintiff actually committed the acts with which he

was charged.

 The issue of plaintiff's requests to call Dr. Navaras as

a witness deserves closer scrutiny.5 As mentioned, the

Court in Wolff held that an inmate "should be allowed to call
 

witnesses ... in his defense when permitting him to do so

will not be unduly hazardous to institutional safety or

correctional goals." 418 U.S. at 566. In Ponte, the Court
 

clarified that prison officials have the burden of justifying

the denial of a witness request by tendering an explanation,

either during the administrative hearing or in connection

with subsequent litigation. 471 U.S. at 497-99; accord,
 

e.g., Smith, 936 F.2d at 1399-1400. This rule is intended to
 

guard against arbitrary action by requiring prison officials

"to explain, in a limited manner, the reason why witnesses

were not allowed to testify." Ponte, 471 U.S. at 497.
 

Reasonable explanations include not only interests of prison

safety and discipline, but also legitimate administrative

concerns. See, e.g., Wolff, 418 U.S. at 566 ("Prison
 

 

5. By contrast, no colorable claim is presented regarding
plaintiff's alleged requests to call the authors of the
disciplinary reports as witnesses. Even if we assume
(contrary to the notations in the hearing records) that such
requests were made, prison officials are not required "to
provide reasons in writing to inmates denied the privilege to
... confront witnesses against them in disciplinary
proceedings." Baxter v. Palmigiano, 425 U.S. 308, 322
 
(1976); accord Wolff, 418 U.S. at 567-69. 
 

 -10-

officials must have the necessary discretion to keep the

hearing within reasonable limits ...."); Ramer v. Kerby, 936
 

F.2d 1102, 1104 (10th Cir. 1991) ("legitimate penological

concerns includ[e], but [are] not limited to, safety or

correctional goals, expense, staffing requirements ..., and

the danger of harassment"). And in general, courts "should

not be too ready to exercise oversight and put aside the

judgment of prison administrators" in this regard. Wolff,
 

418 U.S. at 566. 

 We agree with the lower court that plaintiff has failed

to state a viable claim under these standards. In the

assault case, the board denied the request to have Dr.

Navaras testify on the ground that he "was not present at the

incident." We cannot say that this rationale was

unreasonable. Cf. Powell v. Coughlin, 953 F.2d 744, 751 (2d
 

Cir. 1991) (board's refusal to allow psychiatrist to testify

was proper since he "was not an observer of disputed factual

issues concerning the underlying incident"; receipt of his

notes in lieu of his testimony "was harmless error, if error

at all"). To be sure, Dr. Navaras (apparently plaintiff's

treating psychiatrist) likely would have been able to provide

background information as to plaintiff's mental health,

perhaps even as to his susceptibility to "psychotic

episodes." Yet under the rather unusual circumstances

presented (with an inmate personally proclaiming that he had

 -11-

been "insane" two weeks earlier), any such testimony would

have been of marginal relevance, and would obviously have

expanded the scope of the hearing in a manner the board might

reasonably have wished to avoid. 

 In the property-destruction case, the board did not

permit Dr. Navaras to testify because, according to the

record, plaintiff had failed to submit the required witness-

request form. Such a rationale constitutes an adequate

justification. See, e.g., Hamilton v. O'Leary, 976 F.2d 341,
 

346-47 (7th Cir. 1992); Smith, 936 F.2d at 1400 ("denial of a
 

request to call a witness on the ground that the request is

untimely is well within the disciplinary board's

discretion"). As mentioned, plaintiff disputes this

conclusion, alleging that he did submit the form but that Lt.

Ayala tore it up. The administrative record indicates that

the board, after hearing these differing explanations from

plaintiff and Ayala, chose to believe the latter. Arguably,

this credibility determination, although involving a

collateral issue, is one subject to scrutiny only under

Hill's "some evidence" standard--a test which "does not
 

require examination of the entire record, independent

assessment of the credibility of witnesses, or weighing of

the evidence." 472 U.S. at 455. We need not resolve that

issue, however, since plaintiff's allegation, even if true,

would involve at most harmless error. See, e.g., Elkin v.
 

 -12-

Fauver, 969 F.2d 48, 53 (3d Cir.) (applying harmless error
 

analysis to disciplinary proceedings), cert. denied, 113 S.
 

Ct. 473 (1992); Powell, 953 F.2d at 750-52 (same). For the
 

reasons discussed above, Dr. Navaras' testimony in the

property-destruction case would again have been of negligible

relevance. Indeed, the fact that plaintiff hid the two

"weapons" in the cell--conduct quite at odds with any

suggestion of "insanity"--suggests that psychiatric testimony

would have been even less relevant here.

 For these reasons, we conclude that plaintiff's

complaints were properly dismissed under Rule 12(b)(6).6

 Affirmed.
 

 

6. As we read the complaints, plaintiff's "negligent-
supervision" allegations comprise part of his challenge to
the disciplinary proceedings, rather than being intended as
independent claims for relief. To the extent they were so
intended, we find no suggestion that defendants acted in such
a "wanton" fashion as to have violated the Eighth Amendment.
Wilson v. Seiter, 111 S. Ct. 2321, 2326 (1991). 
 

 -13-