57 F.3d 1061
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 Bernardo FIGUEROA, Plaintiff, Appellant,
v.
George VOSE, et al., Defendants, Appellees.
 No. 94-1578.
 United States Court of Appeals,
First Circuit.
 June 13, 1995.
 
 Bernardo Figueroa on brief pro se.
 David J. Gentile, Esq., On Memorandum In Support of Motion for Summary Disposition for appellees.
 D.R.I.
 AFFIRMED.
 Before SELYA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and BOUDIN, Circuit Judge.
 PER CURIAM.
 
 
 1
 Bernardo Figueroa appeals from the district court's decision that a prison disciplinary board did not violate his federal due process rights under 42 U.S.C. Sec. 1983 when it found him guilty of planning to murder Captain Ronald Brodeur, a correction officer. We affirm. Since the facts have been described in the district court's opinion, we do not repeat them here except as is necessary to explain our affirmance. We turn immediately to Figueroa's contentions on appeal.
 
 1. Notice of Time of Disciplinary Hearing
 
 2
 Figueroa claims that he was not given a required 24- hour notice of his disciplinary hearing and that delivery of the disciplinary report to him two days before the hearing was insufficient notice. Federal law does not require 24-hour advance notice of a disciplinary hearing, however. It requires only that inmates be given written notice of the charges against them at least 24 hours before the disciplinary hearing. See Wolff v. McDonnell, 418 U.S. 539, 564 (1974). This court has said that delivering a disciplinary report describing the charges against an inmate to the inmate meets that requirement. See Langton v. Berman, 667 F.2d 231, 234 (1st Cir. 1981). Since Figueroa does not dispute that he received a copy of the disciplinary report describing the charge against him two days before the disciplinary hearing, the district court correctly concluded that the notice given to Figueroa satisfied due process.[1]
 
 2. Provision of Interpreter
 
 3
 Figueroa alleges that he should have been given a Spanish-speaking counselor to assist him at the disciplinary hearing rather than an English-speaking counselor. He acknowledges that he understands English, except for an occasional word, but says he does not speak English well and so could not participate "fully" in the hearing. (His spoken English can be hard to understand, as the hearing and trial transcripts show.) At trial, Figueroa said that he had asked both Jack Ward, his English-speaking counselor, and Captain Andrew Anderson, the chairman of the disciplinary board, for Maria Pezza's assistance, but was told that she was unavailable.[2] Figueroa wanted her to assist him at the hearing because she could explain words he did not understand and she would have "defend[ed]" him.
 
 
 4
 We agree with the district court that no due process violation occurred here. In part, Figueroa seems to have hoped that Pezza could have presented his case more persuasively to the disciplinary board than he did. In other words, Pezza would have been useful to him as an advocate. In Wolff, the Supreme Court held that inmates do not have a right to counsel in disciplinary proceedings, 418 U.S. at 570, a position it confirmed in Baxter v. Palmigiano, 425 U.S. 308, 315 (1976). The Court suggested, however, that illiterate inmates or inmates with complex cases should be able to "seek the aid of a fellow inmate, or ... to have adequate substitute aid in the form of help from the staff...." See Wolff, 418 U.S. at 570. Assuming that Figueroa should have been treated as an illiterate inmate, any right that he may have had to staff assistance under Wolff was satisfied when Ward was assigned to help him. In addition, nothing in the record suggests that any deficiency in Figueroa's English adversely affected the disciplinary proceedings. As the transcript of the hearing confirms, Figueroa understands spoken English. Despite sometimes unclear syntax, he can also make himself understood in English. At the hearing, he denied his guilt, explained why he wanted to call Captain Brodeur as a witness, challenged his lack of access to confidential reports, and denied that he had been working in the prison kitchen at the time the alleged murder weapon disappeared. Furthermore, Ward appeared with him at the hearing and, according to Figueroa's post-trial brief, participated in questioning Investigating Officer Joseph Forgue.[3] Figueroa presented his own case and the transcript does not reflect that he ever sought Ward's aid in making his presentation.[4] Moreover, Figueroa testified that Anderson and Ward had told him that Pezza was unavailable, but does not allege any unconditional denial of the assistance of a Spanish- speaking counselor. Although his testimony may suggest that he was told to proceed with the hearing or to proceed with Ward as his counselor,[5] he apparently did not actually ask prison officials to postpone his hearing until Pezza was available. Anderson testified at trial that he had never denied any inmate the counselor of his choice and that he had postponed hearings if the inmate's preferred counselor was absent. We therefore affirm the district court's determination that defendants did not violate Figueroa's constitutional rights by not appointing a Spanish-speaking counselor or interpreter to aid him at the hearing.
 
 3. Denial of Witnesses
 
 5
 According to Figueroa, he should have been permitted to call as witnesses at his disciplinary hearing Captain Brodeur, the correction officer Figueroa allegedly intended to murder; an Officer Fletcher, who apparently investigated the alleged murder plot and/or prepared the disciplinary report against Figueroa; and two inmates, Larry Botton (also given as Boton or Baton in the record) and Gary Ortiz. At the hearing, Figueroa stated that he wanted to call Brodeur to confirm that he and Brodeur had had no problems with each other. On appeal, Figueroa says that, if Fletcher, Botton and Ortiz had appeared at the hearing, their "testimony could have brought forth new or previous[ly] unsolicited facts."
 
 
 6
 At the disciplinary hearing and again at trial, Captain Anderson, the chairman of the disciplinary board, explained the board's determination that testimony by Brodeur about his relationship with Figueroa would not be relevant. Although lack of animosity might normally seem relevant in determining whether one individual might be motivated to kill another, Officer Joseph Forgue, who had investigated the charge against Figueroa, explained at the hearing that such evidence would be irrelevant in Figueroa's case. According to Forgue, it was "well known" in the prison that there was a "contract" on Brodeur's life and that confidential informants had reported that Figueroa had "pick[ed] up" that contract. For that reason, an inmate would not "have to have a problem with someone to stick them. That's irrelevant whether you had a problem with them or not." Given Forgue's statement, the board did not abuse its discretion in not calling Brodeur as a witness. See Smith v. Massachusetts Department of Correction, 936 F.2d 1390, 1399-1400 (1st Cir. 1991) (applying abuse of discretion standard in reviewing disciplinary board's failure to call inmate witnesses); Turner v. Caspari, 38 F.3d 388, 391, 392 (8th Cir. 1994) (noting that prison disciplinary boards have great discretion to decline to call inmate witnesses whose testimony would be irrelevant or unnecessary).[6]
 
 
 7
 Nor is there merit in Figueroa's claims respecting Botton and Ortiz. The transcript of the disciplinary hearing shows that he never asked the board to call them as witnesses, and so the board obviously did not violate his due process rights in not calling them. See Harrison v. Seay, 856 F. Supp. 1275, 1281 (W.D. Tenn. 1994).[7]
 
 
 8
 On appeal, Figueroa alleges that Officer Fletcher's testimony "could have brought forth new or previous[ly] unsolicited facts."[8] The record indicates that Figueroa had told the board that Fletcher would either offer favorable character testimony or would corroborate Figueroa's trouble- free relationship with Brodeur. The disciplinary transcript indicates that Figueroa told the board that Fletcher would testify that Figueroa was "not of that type of character" and that the board regarded his testimony to be irrelevant.[9] According to Anderson's trial testimony, Figueroa had said that Fletcher would testify that Figueroa and Brodeur had not had any problems with each other.[10] Under the circumstances, the court did not err in concluding that the board had not violated due process by declining to call Fletcher as a witness. As noted above, testimony about Figueroa's relationship with Brodeur was irrelevant and unnecessary. In addition, without further specifics, the simple testimony that Figueroa was not the "type" of person to commit murder would not have impugned the confidential informants' clear identification of Figueroa as the inmate who planned to kill Brodeur. See Graham v. Baughman, 772 F.2d 441, 445 (8th Cir. 1985) (prison officials who had to determine whether an inmate had started a fire outside of his cell were well within their discretion in concluding that character evidence was either irrelevant or unnecessary).
 
 
 9
 4. Sufficiency of Evidence and Related Claims
 
 
 10
 Figueroa claimed below that the board's decision was not supported by substantial evidence. The district court concluded that its task in a section 1983 action alleging a violation of federal due process was to determine whether "some evidence" supported the board's decision, citing Superintendent, Massachusetts Correctional Institution v. Hill, 472 U.S. 445 (1985). In Hill, the Supreme Court held that federal due process is satisfied if "some evidence" in the record supports a disciplinary decision, defining that term to mean "any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. Using that standard, the district court found that "some evidence" supported the board's decision, and we agree.[11] We also agree with the court that the Hill standard describes the relevant federal due process standard even though state law imposes a stricter evidentiary standard.[12] See id. at 456 ("We decline to adopt a more stringent evidentiary standard [than the some evidence standard] as a constitutional requirement."); see Goff v. Dailey, 991 F.2d 1437, 1441 n.9 (8th Cir.) (state regulations may provide more protection than the federal Constitution, but cannot raise the standard of due process under the Constitution), cert. denied, 114 S. Ct. 564 (1993); but see Brown v. Fauver, 819 F.2d 395, 399 n.4 (3d Cir. 1987) (Hill did not establish whether the Constitution requires a particular burden of proof in disciplinary proceedings, but spoke only to appellate review standards).
 
 
 11
 In connection with his argument that the board's decision was not supported by substantial evidence, Figueroa asserts two additional claims, which we consider in turn. First, he complains that neither he nor his counselor, Jack Ward, had access to a confidential investigative report based on information provided by unidentified informants "as did the disciplinary board." Figueroa recognizes that granting him access to the confidential report "could have violated institutional security and other investigations."[13] But he claims that Ward could have reviewed the report and inquired into the informants' mutual corroboration, personal knowledge of the matter, and reliability. His point seems to be that Ward might have uncovered evidence discrediting the informants or their information, so that Ward's inability to see the report not only violated Figueroa's due process rights, but should also preclude the district court from considering evidence deriving from the report. Under the circumstances present here, we disagree. First, as the chairman of the disciplinary board testified at trial, the board did not rely on the confidential report in finding Figueroa guilty; it did not even see that report. Although the report had been attached to Figueroa's disciplinary report at one time, it had been removed before the hearing. Instead, the board relied solely on Officer Forgue's statements at the hearing describing the nature and reliability of the informants' information. (According to Anderson's trial testimony, Forgue authored the confidential report). Figueroa was present at the hearing and obviously knew what Forgue had said. Accordingly, he was in exactly the same position as the board in terms of his familiarity with the evidence against him. Figueroa was permitted to speak freely during the hearing and had the right to cross-examine Forgue. See Morris v. Travisono, 499 F. Supp. 149, 169 (D.R.I. 1980) (Disciplinary Procedures, Sec. III.C.4: An inmate has "the right to call a reasonable number of witnesses, both adverse and favorable and examine said witnesses."). At no time during the hearing did Figueroa attempt to question Forgue about the confidential informants' information, reliability, or personal knowledge of the matter. Second, Figueroa never asked the disciplinary board to let Ward review the confidential report, nor did he present that issue to the district court.[14] Accordingly, this issue is not even properly before us. Finally, prison officials have no general federal due process obligation to disclose confidential reports to staff members assisting inmates charged with disciplinary infractions. See Mendoza v. Miller, 779 F.2d 1287, 1298 (7th Cir. 1985) (declining to adopt a general rule that inmate counsel should have access to confidential investigative reports used in disciplinary hearings), cert. denied, 476 U.S. 1142 (1986); Freitas v. Auger, 837 F.2d 806, 810 n.7 (8th Cir. 1988) (rejecting an inmate's contention that the court should have made confidential reports available to him or his attorney after the informants were transferred to a different prison); see also Wagner v. Williford, 804 F.2d 1012, 1017-18 (7th Cir. 1986), and on appeal after remand Wagner v. Henman, 902 F.2d 578, 581 (7th Cir. 1990) (both confirming that there is no "general rule" in the Seventh Circuit that confidential reports may be disclosed to inmates' counsel and describing the circumstances under which a "limited release of redacted material information" to counsel might be possible); White v. Nix, 43 F.3d 374, 378 (8th Cir. 1994) (concluding that case law concerning the discovery of confidential investigative files during prison disciplinary hearings "uniformly" sets certain conditions on an inmate's counsel's access to such files).
 
 
 12
 Next, Figueroa challenges the district court's reliance on evidence that the intended murder weapon was a sharpened soup ladle which had disappeared from the prison kitchen at the time Figueroa worked there.[15] At the hearing, Officer Forgue told the board that confidential informants had reported that the murder weapon was a honed soup ladle. He also reported that Figueroa had worked in the kitchen at the time the ladle disappeared. On appeal, Figueroa denies that he ever worked in the kitchen and that he ever had access to the soup ladle. At the disciplinary hearing, however, Figueroa acknowledged that he had worked in the kitchen. He also indicated that he had heard that a soup ladle was missing, but denied that he had been working in the kitchen at the time the ladle disappeared. Thus, the undisputed evidence before the board was that Figueroa had worked in the kitchen and that a soup ladle was missing. A controversy existed on the important question whether Figueroa had worked in the kitchen at the time the ladle disappeared. On that point, the board obviously discredited Figueroa, choosing to believe the results of Forgue's investigation. On review, neither we nor the district court may revisit the board's decision not to credit Figueroa's testimony. Cf. Hill, 472 U.S. at 455 (indicating that a disciplinary board's factual findings are not subject to "second-guessing" upon review, nor is the reviewing court required to independently assess the credibility of witnesses or weigh the evidence); Turner v. Scroggy, 831 F.2d 135, 140 (6th Cir. 1987) ("it is not our task nor the magistrate's to substitute credibility determinations contrary to the [disciplinary] committee's ultimate finding") (majority opinion); Harrison, 856 F. Supp. at 1280 ("Reexamination of a prison disciplinary board's credibility choices is beyond the scope of federal court review of disciplinary proceedings.") (citing Turner v. Scroggy ).
 
 5. Remaining Claims
 
 13
 Figueroa complains that defendants failed to give him a copy of the disciplinary hearing tape in advance of trial as ordered by the district court. Figueroa did not bring that fact to the court's attention until the day of the trial. When he did so, the court recessed the trial to permit the parties to listen to the tape. After the parties had listened to the tape, the court asked Figueroa if he was ready to proceed. Figueroa said that he was and the trial was conducted without any subsequent objection by Figueroa.[16] The trial transcript shows that Figueroa was familiar with the contents of the disciplinary hearing tape and knew what had gone on at the hearing. Nothing in the transcript suggests that his inability to listen to the tape in advance had prejudiced his presentation of evidence at trial. Under those circumstances, his claim is meritless.
 
 
 14
 In an "Addendum" to his appellate brief, Figueroa claims that Officer Forgue sat on the disciplinary board in violation of the Morris Rules. See Morris v. Travisono, 499 F. Supp. at 169 (Disciplinary Procedures, Sec. III.B: "Any officer who initiates a violation report or who investigates and reviews the initiating officer's report is not eligible to sit on the disciplinary board to hear that case."). This claim, which is apparently based on an inadvertent error in the district court's description of the facts, was not presented below and is clearly refuted by the record.
 
 
 15
 Affirmed.
 
 
 
 [1]
 On appeal, Figueroa appears to claim as well that failure to provide 24-hour advance notice of the hearing violated the Morris Rules, which are regulations governing the discipline and classification of inmates at the state facility where Figueroa is incarcerated and which have the force and effect of state law. See Rodi v. Ventetuolo, 941 F.2d 22, 26-28 (1st Cir. 1991). The version of the Morris Rules at issue is appended to Morris v. Travisono, 499 F. Supp. 149 (D.R.I. 1980). Figueroa's state law claims are not before us. Although his complaint asserted both state and federal claims, in his pre-trial memorandum Figueroa argued only his due process claims, relying on cases discussing federal due process. Without objection by Figueroa, the district court issued a pre-trial order limiting the evidence to be presented at trial to the federal due process issues. The court's decision resolved only the federal due process claims. Since the court never asserted pendent jurisdiction over Figueroa's state law claims and did not resolve those claims, Figueroa remains free to bring his state law claims in state court if not otherwise barred from doing so by state law, e.g., by any applicable statute of limitations
 
 
 [2]
 The district court apparently discredited Figueroa's testimony at trial that he had asked for Pezza's assistance, relying on the transcript of the disciplinary hearing which did not record any such request. Anderson testified that Figueroa had never asked him for a Spanish-speaking counselor or interpreter and that he would have readily granted any such request. However, Figueroa testified that he had also asked Ward for Pezza's assistance
 
 
 [3]
 Ward's participation is not evident from the hearing transcript which apparently incorrectly attributes his questions to disciplinary board members
 
 
 [4]
 At trial, Figueroa stated that Ward had been of no help to him, but he does not suggest that Ward's alleged failure to help him is actionable under section 1983. In any event, because there is no right to counsel at prison disciplinary hearings, an inmate has no cause of action for a staff assistant's allegedly ineffective assistance. See Bostic v. Carlson, 884 F.2d 1267, 1274 (9th Cir. 1989); Harrison v. Seay, 856 F. Supp. 1275, 1281 (W.D. Tenn. 1994); cf. Coleman v. Thompson, 501 U.S. 722, 755 (1991) (because an inmate has no right to counsel to collaterally attack his conviction, he has no claim for ineffective assistance of such counsel)
 
 
 [5]
 Figueroa testified as follows: "I ask [Ward and Anderson] if I can have Spanish counsellor, specific, Maria Pezza. I was told that Maria Pezza was embarcation at the time, [inaudible]. I have to proceed."
 
 
 [6]
 Brodeur's testimony would also have been cumulative and was unnecessary for that reason. Figueroa told the board that he had had no problems with Brodeur, and Forgue agreed, telling the board that Figueroa had no motive to kill Brodeur that he knew of and that, as Figueroa had said, he and Brodeur did not appear to have problems with each other
 
 
 [7]
 In his pre-trial memorandum, Figueroa told the district court that Botton would testify at trial that Figueroa had been "set up" by a correction officer and another inmate and that Ortiz would testify that an Officer Martinez and inmate Armando Perez had plotted to set him up. The district court would not let Botton and Ortiz testify, ruling, correctly, that the question before the court was not whether Figueroa was actually innocent of the charge against him. On appeal, Figueroa appears to have abandoned the claim that Botton and Ortiz would have testified that he had been set up
 
 
 [8]
 In his post-trial memorandum, Figueroa stated that Fletcher was the original investigating officer, that another inmate had been under investigation, and that Fletcher would testify that Figueroa was the "wrong man." In his pre-trial memorandum, however, Figueroa had shown no interest in calling Fletcher as a witness, proffering instead the distinctly different theory described above that another inmate and a correction officer had set him up. On appeal, he has obviously abandoned his claim that Fletcher would have testified that a different inmate than Figueroa had plotted to murder Brodeur
 
 
 [9]
 The disciplinary hearing transcript shows that Figueroa asked to call Fletcher as a witness, but does not record any discussion of the substance of Fletcher's testimony. That discussion apparently occurred, however. The transcript indicates that Figueroa assented to Anderson's statement that "you request ... Officer Fletcher to come up here to testify that you're not of that type of character" and his explanation that the proposed testimony was irrelevant. In addition, in his appellate statement of facts, Figueroa states that he told the board that Fletcher would have testified that he was not the "type of person who would commit the act alleged."
 
 
 [10]
 Although Figueroa objected to Anderson's statement, he did not explain his basis for disagreeing and did not tell the court that Fletcher would have given different testimony
 
 
 [11]
 The district court cited the following facts: that different informants, who had had no contact with each other, had identified Figueroa as the inmate who was to stab Brodeur; that each informant's information corroborated the information proffered by the other informant; that the informants had personal knowledge of the matter and had provided accurate information in the past; that there was evidence that the informants were credible; that the weapon the informants claimed Figueroa intended to use-a soup ladle honed to a knife blade-had disappeared from the kitchen when Figueroa worked in the kitchen; and, finally, that Figueroa had offered no rebuttal information or any exonerating evidence
 
 
 [12]
 Accordingly, we do not decide whether substantial evidence in the record supported the board's decision
 
 
 [13]
 Therefore, Figueroa is apparently not challenging the district court's finding that he was not entitled to see the confidential report which apparently identified at least one of the inmates who had reported that Figueroa had planned to kill Brodeur. It is well established that inmates have no federal due process right to obtain evidence which could identify confidential informants. See, e.g., Langton, 667 F.2d at 235 (rejecting an inmate's contention that he had the right to cross-examine a confidential informant or review the informant's statement because Wolff left such matters to prison officials' discretion); Mendoza v. Miller, 779 F.2d 1287, 1294 (7th Cir. 1985) (stating that Wolff and Seventh Circuit cases establish "unequivocally" that an inmate does not have a due process right to be informed of the identity of confidential informants), cert. denied, 476 U.S. 1142 (1986); Zimmerlee v. Keeney, 831 F.2d 183, 186 (9th Cir. 1987) ("Due process does not require that an informant's identity be revealed to an inmate."), cert. denied, 487 U.S. 1207 (1988)
 
 
 [14]
 In his pre-trial memorandum, he argued only that he had the right to see the report
 
 
 [15]
 As of the date of the hearing, the alleged weapon had not been found
 
 
 [16]
 In his post-trial memorandum, Figueroa alleged only that the transcription of the tape did not accurately reflect the tape of the hearing. He did not argue that any mistranscription had caused the court to misconstrue any critical fact, however, but only that responses of his which were transcribed as inaudible "could have been a response" asking for an interpreter or indicating that he did not understand the proceedings