Timothy TURNEY, Plaintiff-Appellee,

v.

Gene SCROGGY; Faye Henry and R.W. Pershing, Defendants-Appellants.

No. 86–5130.

United States Court of Appeals, Sixth Circuit.

Submitted Oct. 6, 1986.

Decided Oct. 16, 1987.

Barbara W. Jones, Linda G. Cooper, David A. Sexton, Corrections Cabinet, Office of Gen. Counsel, Frankfort, Ky., Leslie Patterson Vose, Landrum, Shouse, & Patterson, Lexington, Ky., for defendants-appellants.

Timothy Turney, pro se.

Before ENGEL, JONES and NELSON, Circuit Judges.

ENGEL, Circuit Judge.

Defendants Gene Scroggy, Faye Henry and R.W. Pershing appeal from an order of the United States District Court for the Western District of Kentucky denying their motion for dismissal or summary judgment on the basis of qualified immunity. Our jurisdiction is based on *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), which permits an immediate appeal under 28 U.S.C. § 1291 from an order denying a claim of qualified immunity before final judgment. *See also Kennedy v. City of Cleveland*, 797 F.2d 297 (6th Cir.1986).

Plaintiff Timothy Turney, an inmate incarcerated at the Kentucky State Penitentiary at Eddyville, brought an action under 42 U.S.C. § 1983 arising out of an incident which was alleged to have occurred on July 27, 1984. On that date he received a disciplinary report for a Category VII, Item 3 offense, "sexual assault" based upon an incident report which was turned in by prison nurse Faye Henry and was investigated by investigating officer R.W. Pershing.

Turney's complaint in the district court was filed on the form used for prisoner actions under 42 U.S.C. § 1983. It names as defendants Henry, Pershing, and Gene Scroggy, Warden of the Kentucky State Prison at Eddyville. The statement of claim is reproduced fully as follows:

Plaintiff was falsely accused of sexually assaulting defendant Faye Henry on 27 July 1984 when he went to the inmate hospital for treatment for injuries on his foot. What may have started out as an innocent slight touching was escalated and blown completely out of proportion. At his Adjustment Committee Hearing, plaintiff was found guilty of violating institutional rules, i.e., "Category VII, Offense 3, "Sexual Assault" where no force was used or serious injury occurred." Plaintiff was sentenced to 180 days segregation and loss [sic] 2 years nonrestorable good time credits.

The complaint requested the following relief:

Declare that the policy and/or practice of charging inmates with sexual assault where no force was used, the touching was slight and unintentional, and no serious injury reslted [sic]. Prohibit defendants from enforcing the non-restorable good time obligation, Expungment of incident from all institutional records, monetary damages of # 30,000.00 [sic].

In further support of his case Turney filed an affidavit in the district court setting forth his version of what happened. The affidavit expands on the complaint form's statement of claim; Turney apparently intended the affidavit to be part of the complaint. The affidavit states that on July 27, 1984 at approximately 12:30 p.m. Turney arrived at the inmate hospital to

receive treatment for his foot, it having been injured a few days earlier.

Plaintiff arrived in somewhat of a joyous mood. He was anticipating the attention he was receiving from the medical staff. He felt especially confident and relaxed when he was in the presents [sic] of Mrs. Henry. She reminded him of his grandmother. Whom plaintiff loves very dearly.... Defendant Henry had treated plaintiff in a very professional and friendly manner. Plaintiff in return, always conducted himself in a manner he thought acceptable to Mrs. Henry. There was no physical attraction involved. Other than the similarities and resemblance between Mrs. Henry and his grandmother, and the ease in which she went about her duties, plaintiff imagined or assumed nothing beyond that.

Turney continued that on the particular day he went through the same procedure as he did previously and waited until Mrs. Henry called him into the treatment room. He alleged that after entering the room Mrs. Henry promptly attended to him and after completing her work

she left the room. During this period Mrs. Henry did not once voice her displeasure with him. She didn't scream, talk loud or otherwise indicate she was fearful of plaintiff. In point of fact, Mrs. Henry was calm throughout the encounter. There is simply nothing in the record to indicate a struggle insured [sic] between Mrs. Henry and himself.... Nevertheless, defendant Pershing entered the room and started insinuating and accusing plaintiff of sexually molesting Mrs. Henry. Which plaintiff inflatedly denied. However, plaintiff was escorted from the hospital to the Yard Office. Where he was again intimidated and accused of trying to sexually assault Mrs. Henry.

Turney continued in his affidavit that subsequently Mrs. Henry

initiated disciplinary action against plaintiff by filing an incident report alleging that plaintiff had enetered [sic] the treatment room, closed the door, walked over to her and push [sic] against her right side and shoulder with his hands and knee. She further stated on an attached page that plaintiff placed his hands on her shoulder and his knee against her side. This was done while she was sitting in a chair at her desk. She then instructed plaintiff to open the door. That she don't play that way. Whereupon, plaintiff supposedly backed up and opened the door as she requested.

The affidavit then contains statements minimizing Turney's conduct: "Defendant Henry doesn't claim that plaintiff used or threatened the use of bodily harm.... By no stretch of the imagination can the brief and slight touching described by defendant raise [sic] to the level of sexual assault." The affidavit then alleges that

defendant Pershing, enraged perhaps by the fact that an inmate had been involved with a female employee, charged the highest offense so as to obtain the serveres [sic] punishment. There is no doubt that the trival [sic] incident was escalated. There's a substantial difference between inappropriate sex act and sexual assault. The main difference is the elements necessary to prove the one and not the other. However, of chief concern to plaintiff is the severe punishment he received.

Henry initiated the disciplinary action by submitting the following incident report in writing to the adjustment committee:

I told the above inmate to come into the hospital treatment room for dressing change on his toe. He came into the treatment room and closed the door and walked over to me and pushed against my right side and shoulder with his hands and knee. (continued on separate sheet) His hands on my shoulder and his knee against my side, as I sat in a chair at the desk. I instructed him to open the door, that I don't play that way. He backed up and opened the door. I got up and walked out the door, and instructed him to come out and sit in a chair in the hallway by the treatment room. No one else was in the area at the time, and we could not be seen by anyone.

Defendant Pershing made the following report to the adjustment committee in his capacity as investigating supervisor: "Turney states he is not guilty. The statements she made are false. The door was open and he never even got close to her."

A hearing before the adjustment committee was held on August 3, 1984. Mrs. Henry testified at the hearing that she had no opinion whether Turney had a sexual intent in touching her. She further testified that Turney did not hurt her, but that she felt insulted. The adjustment committee found Turney guilty and sentenced him to 180 days segregation and loss of two years of good time credit. The committee stated the following "Reason for Findings and any Punishment": "Based on the fact that resident came in the room and closed the door then placed his hands and knee on Ms. Henry. The Committee feels the sentence is necessary to control resident's behavior." Warden Scroggy, acting as superintendent of review, reviewed the action of the adjustment committee and concurred in its result.

It is undisputed that Turney's complaint amounts to a claim that the record made before the adjustment committee and reviewed by the warden was so factually deficient that the finding that Turney committed a sexual assault violated the Due Process Clause of the Constitution. In the district court, the defendants moved for summary judgment on the basis of qualified immunity, arguing that the facts as described above show that there was no due process violation. The district judge referred the motion to a magistrate, who recommended that the motion be denied. The magistrate reached this conclusion after hearing the tape of the nurse's testimony to the adjustment committee and reviewing this and the other evidence against the standard of *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). The magistrate stated in his report:

> The Magistrate has reviewed the tape of the plaintiff's adjustment committee hearing which was supplied by the defendants in support of their motion to dismiss. This review has convinced the

undersigned that there is in fact *no* evidence to support a finding that the plaintiff sexually assaulted the complaining witness on the date in question. We reach this opinion without having had the opportunity to peruse a definition of the offense but rather by considering "sexual assault" in its usual context. In addition to the fact that the complaint states that the plaintiff touched the complainant on the right shoulder and the side with his hands and knee. In response to questioning at the adjustment committee hearing by inmate counsel, the complainant acknowledged that she had no opinion as to whether this touching was prompted by a sexually motivated intent and that she was not hurt as a result of the encounter. She stated that she felt "insulted". The defendant would have the Court dismiss the complaint pursuant to *Superintendent, id.,* upon a finding that there is some evidence to support the Committee's finding that the plaintiff committed a sexual assault on the date in question. We are, however, convinced that the Adjustment Committee did not hear any evidence, including the testimony of the complaining witness, upon which to support their finding guilt.

The district court, after noting objections to the magistrate's report, accepted that report and entered an order in conformity therewith denying defendants' motion for summary judgment, and this appeal was duly taken.

■ In *Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), the Supreme Court held that members of a prison adjudicatory committee such as that here have qualified immunity from suits for damages. Turney contends that *Cleavinger* does not apply to Henry, Pershing, and Scroggy because they did not act in an adjudicatory capacity. Turney's argument must fail as to Scroggy because Scroggy's function of reviewing the committee's decision on appeal was unquestionably adjudicatory. Further, Turney misapprehends the underpinnings of *Cleavinger,* whose first premise was that officials who perform discretionary functions have at least

qualified immunity from suits for damages. *Harlow v. Fitzgerald,* 457 U.S. 800, 806, 102 S.Ct. 2727, 2732, 73 L.Ed.2d 396 (1982); *Butz v. Economou,* 438 U.S. 478, 507, 98 S.Ct. 2894, 2911, 57 L.Ed.2d 895 (1978). More specifically, the Supreme Court had already held before *Cleavinger* that state prison employees enjoy a qualified immunity, *Procunier v. Navarette,* 434 U.S. 555, 561, 98 S.Ct. 855, 859, 55 L.Ed.2d 24 (1978). Thus, the question in *Cleavinger* was not whether prison disciplinary committee members have immunity, but whether their immunity is qualified or absolute. 106 S.Ct. at 497.

█ The allegations against Henry and Pershing, read in the light most favorable to the plaintiff, are that they initiated the disciplinary proceedings. Henry made the charge and testified, and Pershing investigated the charge and assigned the offense for which Turney was tried. If Henry and Pershing have any liability, it is only for the wrongful imposition of disciplinary measures resulting from the proceedings that they initiated. Thus, if the members of the adjustment committee would be protected by immunity, so would Henry and Pershing. The issue before us, then, is whether the defendants are entitled to summary judgment on immunity grounds under the circumstances of this case.

In *Superintendent v. Hill* a prison guard happened upon an inmate named Stephens who was bleeding from the mouth and suffering from a swollen eye. Dirt was strewn in the area, and three other inmates were jogging away together. There were no other inmates in the area. The guard concluded on the basis of these observations that Stephens had been beaten by the other three. Also, a prison medic told the guard that Stephens had been beaten. The three inmates were charged with assaulting Stephens. At the disciplinary hearing the guard testified to what he had observed and what the medic had told him. The three inmates pleaded innocent, and Stephens gave written statements that they had not caused his injuries. The disciplinary committee returned a finding of guilty and imposed a sentence of revoca-

tion of good time credits. *Hill,* 472 U.S. at 447–48, 105 S.Ct. at 2770–71.

The Supreme Court was presented with the question of whether the disciplinary committee's finding had enough evidentiary support to satisfy due process. The Court first explained the quantity of evidence that due process requires for a prison disciplinary action that deprives an inmate of a liberty interest such as good time credits:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. This standard is met if there was some evidence from which the conclusion of the administrative tribunal could be deduced.... Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witness, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.... Revocation of good time credits is not comparable to a criminal conviction, ... and neither the amount of evidence necessary to support such a conviction, see *Jackson v. Virginia,* 443 U.S. 307 [99 S.Ct. 2781, 61 L.Ed.2d 560] (1979), nor any other standard greater than some evidence applies in this context.

*Id.* at 455–56, 105 S.Ct. at 2774–75 (citation omitted).

Applying the "some evidence" standard to the facts of *Hill,* the Court held that the prison committee's decision satisfied due process:

> The disciplinary board received evidence in the form of testimony from the prison guard and copies of his written report. That evidence indicated that the guard heard some commotion and, upon investigating, discovered an inmate who evidently had just been assaulted. The guard saw three other inmates fleeing together down an enclosed walkway. No other inmates were in the area.

The Federal Constitution does not require evidence that logically precludes any conclusion but the one reached by the disciplinary board.... Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.

*Id.* at 456–57, 105 S.Ct. at 2775.

■ We turn to the application of *Hill* to the present case. At the outset we hold that the magistrate erred in weighing the nurse's testimony that she did not know whether Turney had a sexual motive against her earlier suggestion in the incident report that Turney had a sexual motive. In this respect the case resembles *Hill.* There Stephens stated that the other three inmates did not assault him, and the prison committee rejected this version of the incident. It is entirely plausible that the victim of an assault in a prison will out of fear of reprisal refrain from testifying against the culprit. We do not know whether this consideration or some other consideration led the committee in the present case to discredit the nurse's exculpatory testimony. In any event it is not our task nor the magistrate's to substitute credibility determinations contrary to the committee's ultimate finding. The committee was entitled to accept the nurse's earlier, inconsistent statement. Our task under *Hill* is to look at the entire record, including that statement, to see whether there is "some evidence" that can support the committee's finding.

■ In our view the record contains some evidence of sexual assault and is sufficient to support the committee's finding. In this regard we find the following evidence to be most important: Turney closed the door; he touched the nurse; and she told him that she "doesn't play that way," which we interpret to mean that at the time she perceived Turney to be making a sexual advance. Furthermore, Turney's affidavit to the district court makes clear that at least some encounter took place, although

he asserted to the adjustment committee that "he never even got close to" Henry. This is a classic dispute of fact hinging on a classic credibility dispute.

Another aspect of Turney's complaint is that he was charged with too severe an offense. He states in his affidavit, "There's a substantial difference between inappropriate sex act and sexual assault," and he stresses that he did not "use[ ] or threaten[ ] the use of bodily harm." However, we cannot interfere with the discretion of the prison authorities to define offenses under their internal rules and to assign offenses in particular cases. Because we, like the magistrate, have not been supplied with a definition of Turney's offense under the prison's rules, we are limited to a review of what the magistrate concluded after he "consider[ed] 'sexual assault' in its usual context." We hold that he erred in finding that there was no evidence to support the adjustment committee's action against Turney.

■ A qualified immunity appeal is limited to the question of whether a defendant should be excused from the litigation to the extent the plaintiff seeks money damages. Because "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated," *Mitchell v. Forsyth,* 472 U.S. at 527–28, 105 S.Ct. at 2816, granting immunity to the defendant might not end the lawsuit if the plaintiff also seeks injunctive relief. In the present case Turney seeks injunctive relief, but his injunctive claim is based only on the alleged due process violation in his disciplinary proceeding; he does not attack any of the prison's general policies or procedures. Therefore, our decision that Turney is not entitled to damages because there was no due process violation necessarily extinguishes his claim for injunctive relief as well.

REVERSED and REMANDED with directions to DISMISS the complaint.

JONES, Circuit Judge, concurring in part and dissenting in part.

I concur in that portion of the court's opinion granting summary judgment to de-

fendant Henry on the basis of qualified immunity. In my view, Henry has not violated a clearly established constitutional right with respect to when or how prison employees may report incidents to their superiors. However, for the reasons set forth below, I respectfully dissent from the majority's conclusion that defendants Pershing and Scroggy are entitled to qualified immunity.

The only question we need to answer in addressing the qualified immunity claims of Pershing and Scroggy is whether their actions have violated clearly established constitutional rights of which a reasonable person would be aware. *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982). Pershing is accused of failing to conduct an adequate investigation of the alleged assault and for assigning a charge that severely overstates the nature of plaintiff's "crime." At the time of the events in this case it was sufficiently well established that an inmate is entitled to certain minimal due process protections before being deprived of good time credits. *Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Certainly among these protections is the right not to be charged with a major misconduct offense without first having the benefit of a good faith investigation. *Ivey v. Wilson*, 577 F.Supp. 169, 172 (W.D.Ky.1983).

In this case Pershing apparently did no more than take the original report of the nurse and then ask Turney for his side of the story before charging Turney with sexual assault. However, as the lower court found, this meager investigation failed to turn up even the slightest indication that a sexual assault had occurred. Accordingly, I would hold that Pershing has violated a clearly established constitutional right, and would not grant him qualified immunity.

Similarly, Warden Scroggy should not be entitled to qualified immunity. The claim against Scroggy is based on his review and approval of the disciplinary committee's actions. At the time of this incident it was clearly established as a matter of due process that an inmate could not be found guilty of a major misconduct offense unless there was some evidence to support the conviction. The Supreme Court did not explicitly articulate this right until 1985 in *Superintendent, Massachusetts Correctional Institute v. Hill*, 472 U.S. 445, 105 S.Ct. 2768, 86 L.Ed.2d 356 (1985). Nevertheless, in light of the extensive due process rights outlined by the Court in *Wolff v. McDonnell, supra,* prison officials could not have thought it constitutional to convict a prisoner on a charge for which there was no evidence.

I agree with the district court that *no* evidence exists to support the conviction in this case. The evidence only shows that Turney "touched" Nurse Henry with his hand and knee while she sat at her desk. Indeed, Henry herself acknowledged at the hearing that she had no opinion as to whether the "touching" was sexually motivated, and admitted that she was not hurt as a result of the encounter but rather was only "insulted." Contrary to the conclusion of the majority, I do not believe it was error for the lower court to weigh this testimony. Nurse Henry *never* suggested in the incident report that Turney had a sexual motive in his actions. Consequently, her statements at the hearing are not at all inconsistent with her earlier account of the incident. Furthermore, I do not believe that this case resembles *Hill.* In *Hill,* the incident report was filed by a prison guard against three inmates the guard had observed running from the scene of an assault. The report charged the defendants with assault upon another inmate. The victim of the assault gave a written statement that the three had not caused his injuries. Nevertheless, the inmates were found guilty by the disciplinary board and this finding was sustained by the Supreme Court. In *Hill* the statement of the victim was properly rejected by the board as motivated by fear of reprisal. In this case, however, it was the *victim* of the assault, Nurse Henry, who filed the incident report to begin with. Further, based on the way that Henry handled herself during the actual encounter, there is absolutely no indication that she feared this inmate in the slightest. Accordingly, even were I to

agree that Nurse Henry's testimony before the adjustment committee had contradicted earlier suggestions in the incident report that Turney's actions were sexually motivated, I would nevertheless allow the lower court to afford her testimony substantial weight as it pertains to her subjective impressions of Turney's intentions.

Finally, my conclusion that Warden Scroggy is not entitled to qualified immunity is consistent with *Cleavinger v. Saxner*, 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985). *Cleavinger* merely holds that an individual acting in an adjudicatory capacity is entitled to immunity so long as he has not violated a clearly established constitutional right. *Id.* at 504. While I agree that Warden Scroggy's actions in this case were "adjudicatory," I do not believe he has afforded this inmate the due process to which he was clearly entitled.

Accordingly, I dissent from the court's grant of qualified immunity to Warden Scroggy.