James Ray HARRISON, Plaintiff,

v.

Larry W. SEAY, et al., Defendants.

No. 94–2257–M1–A.

United States District Court,
W.D. Tennessee,
Western Division.

June 24, 1994.

James Ray Harrison, pro se.

## ORDER OF DISMISSAL

McCALLA, District Judge.

Plaintiff, James Ray Harrison, an inmate at Lake County Regional Correctional Facility (LCRCF) in Tiptonville, Tennessee, has filed another complaint under 42 U.S.C. § 1983.[1]

---

1. Harrison has filed a number of frivolous or meritless cases over the past three years:

In the most recent case, *Harrison v. Compton*, No. 93–2654–H/A, the court dismissed most of the claims, including a First–Amendment claim that he had a right to file a grievance, on October 28, 1993, and the plaintiff voluntarily dismissed the remaining claim on November 10, 1993. Plaintiff's earlier cases include:

*Harrison v. Bradley*, No. 93–2187–4, in which a First Amendment court-access claim, among others, was dismissed under 28 U.S.C. § 1915(d) on March 24, 1993.

*Harrison v. Dotson*, No. 93–1010, in which a disciplinary segregation due process claim, among others, was dismissed under 28 U.S.C. § 1915(d) on January 25, 1993.

*Harrison v. Raney*, 837 F.Supp. 875 (1993), in which partial dismissal as to a First Amendment court-access claim, among others, was entered under 28 U.S.C. § 1915(d) on May 28, 1992, with summary judgment being entered for the remaining defendants on November 5, 1993.

*Harrison v. Reynolds*, No. 92–1207, in which a First Amendment court-access claim, among others, was dismissed under 28 U.S.C. § 1915(d) on October 22, 1992.

*Harrison v. Holloway*, No. 91–2571–M1, in which partial dismissal as to a First Amend-

In this action, Harrison again sues Tennessee Department of Correction (TDOC) Commissioner **Christine Bradley**, WTHSF warden **Billy Compton**, WTHSF food service manager **Larry Seay**, WTHSF librarian **Elmo Len Holmes**, and WTHSF sergeant Michael Stuart. To summarize briefly the allegations of the nine-page complaint and thirty-plus pages of attachments, Harrison is again attempting to use this court's authority to coerce the defendants into granting him superior privileges as a prison jailhouse lawyer. On November 25, 1993, Harrison, in his guise as a writ-writer, wrote a letter to Seay, demanding that Seay not dismiss another inmate from a food services job, making other demands, and setting various conditions for the handling of the inmate's grievance. Harrison closed his letter by stating, "Any further attempt on your part to dismiss Mr. Mullikin will result in more serious litigation." Seay responded on November 30, 1993, by charging Harrison with the disciplinary offense of threatening an employee. Holmes at first agreed, then declined, on advice of counsel, to represent Harrison at the disciplinary hearing. With Sergeant Stuart acting as chairman, the disciplinary board conducted a hearing on February 22, 1994. Seay testified that he considered the entire letter threatening because it implied that Seay should agree to the demands therein or Harrison would harm him. "I took it as you do as I say or else." The board imposed five days punitive segregation, and Compton and Bradley denied plaintiff's appeals.

Plaintiff now sues, alleging that Holmes's refusal to represent him deprived him of his right to defend himself at the disciplinary hearing, that the disciplinary conviction was not supported by the evidence, that the written findings in the disciplinary report were inadequate, that Seay acted in retaliation for plaintiff's exercise of his First Amendment right of petitioning the courts, that Stuart refused to allow him to call any witnesses, that the defendants disregarded various TDOC regulations, and that his appeal was denied despite due process violations. Plaintiff attached the disciplinary records, including the offending letter that the board considered, the records of his appeal, and copies of internal Tennessee Department of Corrections (TDOC) memoranda regarding the proper conduct of prison disciplinary hearings. Plaintiff seeks $25,000 in punitive damages.

Dealing first with plaintiff's claim that he was denied due process because the disciplinary board's findings were not supported by the evidence and because the written description was inadequate, plaintiff's claim is meritless.

Plaintiff's claim of insufficient evidence is also without basis. Inmates enjoy a narrow set of due process rights when prison authorities institute disciplinary proceedings. *See Cleavinger v. Saxner,* 474 U.S. 193, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985) (disciplinary board members protected by qualified immunity); *Superintendent v. Hill,* 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2773–75, 86 L.Ed.2d 356 (1985) (disciplinary findings satisfy due process if supported by any evidence, however meager); *Ponte v. Real,* 471 U.S. 491, 495–99, 105 S.Ct. 2192, 2195–97, 85 L.Ed.2d 553 (1985) (disciplinary board need not make contemporaneous record of reasons live witnesses for inmate not allowed); *Baxter v. Palmigiano,* 425 U.S. 308, 319–323, 96 S.Ct. 1551, 1558–60, 47 L.Ed.2d 810 (1976) (disciplinary board may draw adverse inference from inmate's silence; inmate has no right to cross-examination); *Wolff v. McDonnell,* 418 U.S. 539, 564–71, 94 S.Ct. 2963, 2978–82, 41 L.Ed.2d 935 (1974) (defining scope of due process application to prison disciplinary hearings); *Wolfel v. Morris,* 972 F.2d 712

---

ment court-access claim, among others, was entered under 28 U.S.C. § 1915(d) in July of 1991, with summary judgment being entered for the remaining defendant on November 23, 1992.
*Harrison v. Compton,* No. 91–2556–Tu/Bre, in which a First Amendment court-access claim, among others, was dismissed under 28 U.S.C. § 1915(d) on July 25, 1991.

*Harrison v. Holmes,* No. 91–2090–H, in which a jury verdict for the defendant prison officials was entered on May 5, 1993.
The common thread running through almost every dismissed claim brought by this plaintiff is his consistent misinterpretation of the right of access to the courts, the centerpiece of this case.

(6th Cir.1992); *Hensley v. Wilson*, 850 F.2d 269 (6th Cir.1988); *Hudson v. Edmonson*, 848 F.2d 682 (6th Cir.1988); *Turney v. Scroggy*, 831 F.2d 135 (6th Cir.1987).

In general,

"[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."

*Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976). Thus there is no federal constitutional right to be held in a prison system's general population, or in a particular part of a prison. *See Hewitt v. Helms*, 459 U.S. 460, 468–69, 103 S.Ct. 864, 869–70, 74 L.Ed.2d 675 (1983); *Wolff v. McDonnell*, 418 U.S. at 556–57, 94 S.Ct. at 2974–75. Nevertheless, "the repeated use of explicitly mandatory language in connection with requiring specific substantive predicates demands a conclusion that the State has created a protected liberty interest." *Hewitt v. Helms*, 459 U.S. at 472, 103 S.Ct. at 871–72.

Tennessee prison regulations have been interpreted to create a liberty interest in inmates not being confined to punitive or administrative segregation without due process protections. *Franklin v. Aycock*, 795 F.2d 1253, 1260 (6th Cir.1986) (disciplinary segregation); *Bills v. Henderson*, 631 F.2d 1287, 1294 (6th Cir.1980). Due process thus requires that a Tennessee prison inmate who is confined to punitive segregation or deprived of sentence credits be provided a disciplinary hearing in compliance with *Wolff* and *Hill*.

■ Although state laws or regulations create any liberty interest that a TDOC inmate enjoys in connection with confinement to disciplinary segregation, the scope of "the procedural due process required before one may be deprived of a liberty interest is governed by federal constitutional law and not state law." *Black v. Parke*, 4 F.3d 442, 447 (6th Cir.1993). Procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation. *Hewitt*, 459

U.S. at 460–61, 103 S.Ct. at 865–66; *Spruytte v. Walters*, 753 F.2d 498, 508 (6th Cir.1985) (violation of state law does not by itself constitute deprivation of due process). Even if the procedures are phrased in mandatory language, they do not create a substantive liberty interest. Thus plaintiff had no due process right to each procedure set forth in TDOC regulations, but only to those enunciated by *Wolff* and its progeny.

Plaintiff has no right protecting him from being charged with a disciplinary offense. An inmate's due process right with respect to the *filing* of a disciplinary report is subsumed within the procedures enunciated in *Wolff*. If these procedures are followed, the prisoner's due process right is protected, regardless of the truth of the initial report. *See, e.g., Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986); *Sweeney v. Norris*, slip op. at 3, 1988 WL 3478, 1988 U.S.APP. LEXIS 438 (6th Cir. January 19, 1988) (unpublished decision following *Freeman*). *See also Wolfel v. Morris*, 972 F.2d 712, 716 (6th Cir.1992) (filing of report did not violate inmate's due process rights because he was acquitted of the charge).

■ Plaintiff's sufficiency of the evidence claim is meritless. A federal court's review of the quantum of evidence supporting a prison disciplinary board's decision is limited to determining whether some evidence supports the decision. *Superintendent v. Hill*, 472 U.S. at 455, 105 S.Ct. at 2773–74. The court is not permitted to re-weigh the evidence presented to the board. *Id.* at 455, 105 S.Ct. at 2773–74. Prison officials' determinations in disciplinary cases must be made quickly in a highly charged atmosphere, *id.* at 456, 105 S.Ct. at 2774–75, and the "Constitution does not require evidence that precludes any conclusion but the one reached by the disciplinary board." *Id.* at 457, 105 S.Ct. at 2775.

Plaintiff admits that he wrote the letter he was charged with writing. His sufficiency of the evidence claim rests on the contention that the letter threatened no physical harm, but only stated his intention to file a lawsuit against Seay if he did not comply with plaintiff's demands, which plaintiff characterizes

as a legitimate pursuit of an administrative grievance.

"[T]he core functions of prison administration [are] maintaining safety and internal security." *Turner v. Safley*, 482 U.S. 78, 92, 107 S.Ct. 2254, 2263, 96 L.Ed.2d 64 (1987). *See also Thornburgh v. Abbott*, 490 U.S. 401, 415, 109 S.Ct. 1874, 1882, 104 L.Ed.2d 459 (1989) (protecting prison security is central to all other correctional goals); *Meadows v. Hopkins*, 713 F.2d 206, 209–10 (6th Cir.1983). An inmate-grievance process is the intersection for many complaints with varying flash points and those grievances create numerous overlapping security concerns. Consequently, TDOC has enacted a strict process for filing and hearing inmate grievances. Nothing in the grievance regulations permits an inmate law clerk providing advice to a grievant to step outside that process and write a letter to a prison official demanding a particular resolution of a grievance.

■ Moreover, contrary to plaintiff's erroneous belief, reflected consistently in his pleadings filed in this district, the right of access to the courts does not guarantee him the right to represent another inmate, nor does it authorize him to act in any representative capacity. *See Smith v. Halford*, 570 F.Supp. 1187, 1194–95 (D.Kan.1983). In short, he has no right to act like a lawyer, or to attempt to arrogate to himself the role of advocate. Rather, the inmate whom he might be trying to advise may have some liberty interest and a corresponding right to assert that right in court. From this right is derived a right to receive legal advice from inmates, if other means of protecting that access to the courts are not adequate. Prison officials thus have some duty not to interfere when plaintiff *provides legal advice* to that inmate. However, plaintiff's right to provide such advice is purely derivative of the right of the inmate who needs the advice, and does not encompass a right to send demand letters or act as a representative.[2]

■ The purely advisory and non-representative nature of the relationship between an inmate law clerk and the inmate needing advice is reinforced by reference to 28 U.S.C. § 1654, which requires a party to proceed in federal court only through a licensed attorney or on his own. *See Bonacci v. Kindt*, 868 F.2d 1442, 1443 (5th Cir.1989) ("jailhouse lawyer" has no authority to file a notice of appeal on behalf of a *pro se* plaintiff). Thus plaintiff could not have filed an action on behalf of the other inmate and the threat of bringing litigation was completely illegitimate. Plaintiff thus had no liberty interest in sending the demand letter to Seay, and no right to threaten him with "further litigation."

■ Plaintiff argues that the letter was not threatening because it did not state Seay would come to physical harm. Prison officials, however, are not limited to imposing disciplinary sanctions only for threats to inflict physical harm. Tennessee Department of Corrections (TDOC) Policy and Procedure No. 502.05(IV)(38) (hereinafter cited as TDOC Reg. No. 502.05(IV)(38)) does not limit the offense of threatening an employee to threats of physical harm. Illegitimate litigation and grievances can constitute a threat by interfering with the sued official's ability to maintain order and discipline, diverting the official's time and energy from prison-administration to responding to the suit, engendering disrespect for the official, creating unnecessary worry and anxiety over possible monetary liability, and enhancing the putative inmate-plaintiff's image within the prison. Furthermore, Rule 11 of the Federal Rules of Civil Procedure explicitly recognizes that the very filing of a lawsuit can constitute harassment.

Finally, in regards to plaintiff's sufficiency of the evidence claim, at the disciplinary hearing Seay testified that he interpreted the letter as an implied threat of harm beyond mere litigation: "I took it as you do as I say or else." Complaint, Attachment 1B. Prison officials are entitled to rely on their prior contact with an inmate and their understanding of inmate jargon in interpreting commu-

---

2. Furthermore, the court notes that an inmate's right of access involves his or her right to present legitimate grievances to the courts. It does not include a right to prepare harassing letters which threaten suit in order to intimidate and denigrate prison officials.
*Smith v. Halford*, 570 F.Supp. 1187, 1194–95 (D.Kan.1983).

nications from inmates. This testimony alone constituted "some evidence" that plaintiff threatened Seay.

> Although the evidence in this case might be characterized as meager, and there was no direct evidence identifying any one of the three inmates as the assailant, the record is not so devoid of evidence that the findings of the disciplinary board were without support or otherwise arbitrary.

*Hill,* 472 U.S. at 457, 105 S.Ct. at 2775.

Furthermore, insofar as plaintiff claims the disciplinary board should not have believed Seay's testimony that he felt threatened, his claim would require that this court review the credibility decision of the board. Reexamination of a prison disciplinary board's credibility choices is beyond the scope of federal court review of disciplinary proceedings. *Turney v. Scroggy,* 831 F.2d 135, 140 (6th Cir.1987).

The evidence satisfied *Superintendent v. Hill.* Plaintiff's insufficiency of the evidence claim is meritless.

■ Similarly, the plaintiff fails in his claim that the written findings were inadequate. Relying on *King v. Wells,* 760 F.2d 89, 94 (6th Cir.1985), Harrison argues that the written record here merely incorporated the information in the disciplinary report without specifically listing the evidence of his guilt. This contention is factually and legally frivolous.

Dealing first with the factual deficiency of this claim, the report states, in pertinent part:

> Findings of Fact and Specific Evidence Relied Upon to Support Those Findings:
>
>> Based on body of writeup; testimony from Larry Seay evidence presented and policy 502.05.
>
> Disposition and a Statement of Reasons Which Supports That Decision:
>
>> Guilty—The board feels that statement in the letter was an implied threat and testimony from Larry Seay that he did feel threatened by the statement.

Complaint at 1C. The report also noted that the plaintiff's letter to Seay was introduced as an exhibit and was attached to the report. Thus the board clearly provided a detailed statement of the reasons for its decision. Plaintiff's contention is apparently based on the specious argument that the board should have written the evidence under "Findings" instead of under "Disposition". This written record, especially when combined with the attached record of the hearing, clearly contains "some evidence" as discussed above, and satisfied *Superintendent v. Hill.* Plaintiff's claim simply disregards the facts in this case.

Plaintiff's claim is also legally frivolous. A written record that complies with *Superintendent v. Hill* necessarily complies with *Wolff.* *Hudson v. Edmonson,* 848 F.2d at 688. Plaintiff's contention that the board's findings violated *Hill* is meritless. Thus no greater detail was required in the written findings. *King v. Wells* is therefore inapplicable, and plaintiff's reliance on it is misplaced.[3]

Furthermore, the focus of the procedures enunciated by *Wolff* and its progeny is a disciplinary process free of the "hazard of arbitrary decision making." *Wolff,* 418 U.S. at 571, 94 S.Ct. at 2982. *See also Walker v. Hughes,* 558 F.2d 1247, 1258 (6th Cir.1977). Plaintiff seeks rather to elevate the use of the hearing form's paragraph headings to a constitutional mandate. The board was not obliged to state the information more than once on the same hearing report.

Finally, in regards to plaintiff's claim that the written findings were inadequate, it is clear that the records attached to the complaint were adequate to inform him of the basis of the board's decision, because he was able to take a detailed and specific appeal to both the warden and Commissioner Bradley. Thus his due process rights were adequately protected.

■ Equally meritless is plaintiff's claim that he was deprived of due process by Holmes's refusal to act as his representative.

---

**3.** Equally clear, plaintiff's reliance on internal TDOC memoranda interpreting and applying *King v. Wells* is misplaced. Internal interpretations of controlling law are not even persuasive authority and the cited memoranda predate *Hudson v. Edmonson.*

An inmate has no right to assistance of counsel at a disciplinary hearing, and therefore no right to effective advice or assistance during that process. *See, e.g., Wolff,* 418 U.S. at 569–70, 94 S.Ct. at 2981–82 (no right to counsel in prison disciplinary hearing). *Cf. Coleman v. Thompson,* 501 U.S. 722, 755, 111 S.Ct. 2546, 2566, 115 L.Ed.2d 640 (1991) (because there is no right to counsel in a collateral attack on a state conviction, the defendant has no right to effective assistance in that proceeding). Plaintiff's reliance on cases holding that a prison disciplinary board may require employees to appear as *witnesses* is simply inapplicable. Holmes was not a witness.

Plaintiff's claim that he was denied the right to call witnesses also does not amount to a due process deprivation. While the general right to present a defense to a disciplinary charge is enunciated in *Wolff,* that right is subject to reasonable limitations. *Ponte v. Real,* 471 U.S. at 495, 105 S.Ct. at 2195. Furthermore, plaintiff's only proposed witness was another inmate who allegedly would have testified about prior conflicts between plaintiff and food services manager Seay. This evidence would have been irrelevant to whether the letter was threatening. In any event, although plaintiff alleges in conclusory fashion that he was not permitted to call witnesses, in actuality, the complaint and attachments demonstrate conclusively that he did not make a request to the board to call any witness in his defense. Plaintiff merely requested, in his letter to Holmes asking him to act as his representative, that Holmes interview a witness before the hearing. Plaintiff mischaracterizes this as evidence that he was not allowed to call witnesses. Plaintiff's failure to request the witness obviously precludes any due process violation.[4]

4. To the extent that plaintiff's complaint should be construed as claiming that the board violated *King v. Wells* by failing to record the specific reason for excluding his witness, he has no claim. That portion of *King v. Wells* was overruled by *Ponte v. Real,* 471 U.S. at 495–99, 105 S.Ct. at 2195–97, and the board need not make a written record of its reason for refusing to allow a witness.

5. Although citation to unpublished Sixth Circuit precedents is disfavored, this case is referred to

Plaintiff's claim that Compton and Bradley deprived him of due process by rejecting his appeal is also meritless. A right to appeal disciplinary convictions is not within the narrow set of due process rights enunciated by *Wolff. See Boles v. Weist,* No. 87–1862, 1988 WL 58866, 1988 U.S.App. LEXIS 7942 (6th Cir. June 10, 1988).[5] Again, the scope of plaintiff's due process rights is defined by federal constitutional law, not by state procedural regulations. *Black v. Parke; Spruytte v. Walters.*

■ Plaintiff's last due process claim, that Seay acted in retaliation for his protected First Amendment activity, is also completely without merit. As discussed, plaintiff was not engaged in legitimate and protected First Amendment activity, but in abuse of the grievance process and the judicial system, and he had no due process right not to be charged with a disciplinary offense. A claim of retaliation in violation of the due process clause must include a "chronology of events from which retaliation may plausibly be inferred." *Cain v. Lane,* 857 F.2d 1139, 1143 n. 6 (7th Cir.1988). An inmate claiming retaliation for an exercise of first amendment rights must show more than a subsequent disciplinary charge. Rather, the prison official's conduct must transcend all bounds of reasonable conduct and shock the conscience. *Williams v. Smith,* 717 F.Supp. 523 (W.D.Mich.1989). *See also Mayberry v. Spicer,* 808 F.Supp. 563, 567 (E.D.Mich.1992) (following *Williams*). The plaintiff makes no such allegations. A plaintiff cannot bootstrap a frivolous complaint with a conclusory allegation of retaliation. It is also clear that an inmate cannot immunize himself from adverse administrative action by prison officials merely by filing grievances or lawsuits. *Smith v. Halford,* 570 F.Supp. at 1194–95.[6]

in the absence of clear published case law from this Circuit "because it establishes the law governing the present action and 'there is no [Sixth Circuit] published opinion that would serve as well.' " *Norton v. Parke,* 892 F.2d 476, 479 n. 7 (6th Cir.1989).

6. For the same reasons, plaintiff's assertions, scattered about his complaint and attachments without ever arising to an actual claim, that all of the defendants were biased against him because

Plaintiff's due process claim lacks an arguable basis either in law or in fact, and is therefore frivolous. *See Denton v. Hernandez,* —— U.S. ——, ——, 112 S.Ct. 1728, 1733, 118 L.Ed.2d 340 (1992); *Neitzke v. Williams,* 490 U.S. 319, 325, 109 S.Ct. 1827, 1831–32, 104 L.Ed.2d 338 (1989).

 As already alluded to above, the First Amendment right of access to the courts enunciated by *Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), does not prohibit all restrictions or limitations on a prison law-clerk's legal activities. As the right is personal to the inmate asserting the substantive liberty interest that is being protected by asserting the right of access, plaintiff here has suffered no interference with his First Amendment freedoms. *Newsom v. Norris,* 888 F.2d 371, 374 (6th Cir.1989). *See also Gassler v. Rayl,* 862 F.2d 706, 707–08 (8th Cir.1988); *Flittie v. Solem,* 827 F.2d 276, 279–80 (8th Cir.1987); *Tuggle v. Barksdale,* 641 F.Supp. 34, 36 (W.D.Tenn. 1985); *Smith v. Halford,* 570 F.Supp. at 1194. As the other inmate whom plaintiff allegedly assisted is not a party to this action, and as plaintiff alleges no interference with presenting his own substantive rights to the courts, his First Amendment court-access claim lacks an arguable basis either in law or in fact, and is therefore frivolous. *See Denton,* —— U.S. at ——, 112 S.Ct. at 1733; *Neitzke,* 490 U.S. at 325, 109 S.Ct. at 1831–32.

As the complaint is frivolous, it is **DISMISSED** pursuant to 28 U.S.C. § 1915(d).

The next issue to be addressed is whether plaintiff should be allowed to appeal this decision *in forma pauperis.* 28 U.S.C. § 1915(a) provides that an appeal may not be taken *in forma pauperis* if the trial court certifies in writing that it is not taken in good faith.

The good faith standard is an objective one. *Coppedge v. United States,* 369 U.S. 438, 445, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1962). An appeal is not taken in good faith if the issue presented is frivolous. *Id.* Ac-

cordingly, it would be inconsistent for a district court to determine that a complaint is too frivolous to be served, yet has sufficient merit to support an appeal *in forma pauperis.* *See Williams v. Kullman,* 722 F.2d 1048, 1050 n. 1 (2nd Cir.1983). The same considerations that lead the court to dismiss this case as frivolous also compel the conclusion that an appeal would be frivolous.

It is therefore **CERTIFIED,** pursuant to 28 U.S.C. § 1915(a), that any appeal in this matter by plaintiff, proceeding *in forma pauperis,* is not taken in good faith.

 The final issue to be addressed is plaintiff's wanton and flagrant abuse of the judicial system. Harrison has repeatedly filed frivolous and noncognizable claims of interference with his First Amendment right of access to the courts. Despite five previous decisions holding such claims frivolous and providing him detailed guidance as to the source and scope of his rights in this matter, he continues to exaggerate, both in his pleadings in this court and his grievances to prison officials, the extent of that right and its application to his activities. Thus, as fully discussed above, his present assertions amount in essence to a claim that he has the right to act as a lawyer. The record in this and his other cases,[7] however, demonstrates that plaintiff is uniquely unqualified to engage in the practice of law—a profession demanding adherence to ethical standards and a sense of proportion in dealing with legal problems. Rather than studying the law in an attempt to discern how it applies to his situations and affects his rights, this plaintiff merely abuses his legal knowledge for the purpose of collecting and citing out-of-context statements and holdings to support only his own version of reality. He personifies the characteristics foretold by the dissent in *Johnson v. Avery,* 393 U.S. 483, 498–502, 89 S.Ct. 747, 755–57, 21 L.Ed.2d 718 (1969):

"[I]t is not necessarily the best amateur legal minds which are devoted to jailhouse lawyering. Rather, the most aggressive

---

of previous lawsuits is meritless and deserves no further discussion.

7. In analyzing a *pro se* pleading, the court may rely on its own records. *Franklin v. Murphy,* 745 F.2d 1221, 1228 (9th Cir.1984).

and domineering personalities may predominate. And it may not be those with the best claims to relief who are served as clients, but those who are weaker and more gullible. Many assert that the aim of the jailhouse lawyer is not the service of truth and justice, but rather self-aggrandizement, profit, and power."

Plaintiff's repetition of frivolous First Amendment court-access claims is by itself sufficient to warrant the imposition of sanctions.

Additionally, however, plaintiff has asserted other frivolous claims, including non-cognizable property deprivation claims and meritless *Wolff* due process claims. Finally, in *Tommie Hebron v. M. Stuart*, No. 94–2149–G/Bro, Harrison prepared the pleadings for the inmate-plaintiff, asserting frivolous property deprivation and *Wolff* claims, after previous dismissals of the same claims in Harrison's own cases.

This court's time and energy have been distracted long enough from significant cases, (including prison cases involving allegations of serious deprivations of real constitutional rights), by Harrison's petty and pretentious filings. Even frivolous cases require application of substantial judicial resources, and Harrison has now had far more than his fair share. It is clear that the plaintiff is a vexatious litigant who is abusing the federal court's jurisdiction in an attempt to harass the defendants. *See Filipas v. Lemons*, 835 F.2d 1145 (6th Cir.1987). This court has the obligation and authority to prevent this type of abuse.

> Federal courts have both the inherent power and the constitutional obligation to protect their jurisdiction from conduct which impairs their ability to carry out Article III functions. If such power did not exist, or if its exercise were somehow dependent upon the actions of another branch of government or upon the entitlement of a private party to injunctive relief, the independence and constitutional role of Article III courts would be endangered.

*In re Martin–Trigona*, 737 F.2d 1254, 1261 (2d Cir.1984), *cert. denied*, 474 U.S. 1061, 106 S.Ct. 807, 88 L.Ed.2d 782 (1985). *See also Winslow v. Romer*, 759 F.Supp. 670, 677–78

(D.Colo.1991); *Kersh v. Borden Chemical, Div. of Borden, Inc.*, 689 F.Supp. 1442, 1452–53 (E.D.Mich.1988). The Sixth Circuit and other appellate courts have endorsed the enjoining of prolific frivolous filers. *See Filipas v. Lemons*. *See also Day v. Allstate Ins. Co.*, 788 F.2d 1110 (5th Cir.1986); *Cotner v. Hopkins*, 795 F.2d 900 (10th Cir.1986); *Procup v. Strickland*, 792 F.2d 1069 (11th Cir. 1986); *Franklin v. Murphy*, 745 F.2d 1221, 1232 (9th Cir.1984); *In re Martin–Trigona; In re Green*, 215 U.S.App.D.C. 393, 669 F.2d 779 (D.C.Cir.1981) (per curiam); *Green v. Warden*, 699 F.2d 364 (7th Cir.), *cert. denied*, 461 U.S. 960, 103 S.Ct. 2436, 77 L.Ed.2d 1321 (1983); *Green v. White*, 616 F.2d 1054, 1056 (8th Cir.1980) (per curiam); *Gordon v. Department of Justice*, 558 F.2d 618 (1st Cir. 1977); *Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir.1972). The court must take care not to impose restrictions that would preclude the party from all access to the courts. *Safir v. United States Lines Inc.*, 792 F.2d 19, 24 (2d Cir.1986); *Sires v. Gabriel*, 748 F.2d 49, 51 (1st Cir.1984).

The court has considered how to prevent Harrison from continuing to abuse the judicial system by continuously attempting to litigate the same or similar frivolous claims, without also completely precluding his access to the courts. *See, e.g., Sickle v. Holloway*, 791 F.2d 1431, 1437 (10th Cir.1986) (limited filing restrictions prevent relitigation of frivolous allegations but do not totally preclude access). *See also Lyons v. Randall*, 834 F.2d 493, 496 (5th Cir.1987) (sanctions imposed for third filing of frivolous lawsuit and for suing federal judge protected by absolute judicial immunity). The court therefore will enter the following injunction, prohibiting Harrison from filing any case unless the complaint is accompanied by a motion and an affidavit similar to those required by the district courts in *Winslow*, 759 F.Supp. at 683–85; and *Kersh*, 689 F.Supp. at 1452–53.

Accordingly, this Court enters the following **Permanent Injunction** which shall take immediate effect upon entry of this Order:

1. Plaintiff, James Ray Harrison, is precluded and restrained from filing any new actions in the United States District Court for the Western District of Tennessee

without obtaining leave of this Court. This required action by Harrison shall be deemed to be a condition precedent to the commencement of any legal action by him. Failure by Harrison to seek leave of Court shall be grounds for dismissal.

2. To request leave of court, plaintiff shall file, along with any future complaint:

1) a motion requesting permission of the court to file;

2) an affidavit certifying under penalty of perjury as provided by 28 **U.S.C.** § **1746** that:

a) he has read and understood Rule 11 of the Federal Rules of Civil Procedure;

b) that the complaint contains claims he knows to be reasonably based in law and fact;

c) that he has researched the law and that he knows that the claims in the complaint are subject to the jurisdiction of a federal court;

d) that he is aware that filing any further frivolous actions will result in the imposition of monetary sanctions by the court;

e) that none of the defendants to the new action were defendants in any previous action that was dismissed as frivolous, and

f) that Harrison has been enjoined by this court in this case, and shall state the style, jurisdiction, and docket number of this action.

3) He must also attach as an exhibit to the affidavit a list that states:

(a) the full caption of each and every suit which has been previously filed by him or on his behalf in any court against each and every defendant in the new suit that he wishes to file, and

(b) the full caption of each and every suit which he has currently pending.

4) As a second exhibit to that motion, he must provide a copy of each Complaint covered by requirement 3) (a) above and a certified record of its disposition.

5) As a third exhibit to that motion, he must attach a copy of this order.

6) As a fourth exhibit to the that motion, he must attach an affidavit attesting under penalty of perjury that he is not assisting any other inmate in any fashion in relation to an action either filed or intended for filing in this district.

7) If Harrison claims he is being denied access to the courts, he shall state:

1) the style of the case;

2) the jurisdiction;

3) the judge;

4) the docket number;

5) a brief, two-sentence statement of the action being taken or threatened by prison officials;

6) the type of pending motion or other matter before the court that requires his attention, and a brief one-sentence statement of the issue before that court in the motion;

7) whether the pending motion or matter requires him to present legal arguments or factual evidence, or both, to the court;

8) whether any court has issued a specific order in that case directing him to take the action he claims is impeded by prison personnel;

9) the deadline of the pending motion or other matter;

10) the minimum materials absolutely necessary for him to respond to the matter or comply with a court order; and

11) the prejudice that he has or will suffer from the challenged action.

3. Additionally, any complaint filed by Harrison shall be filed only on a preprinted form obtained from the clerk of court, and shall not exceed three sheets of 8½ by 11 inch paper, one side to a sheet.

Any complaint filed by plaintiff without this motion, affidavit, and exhibits, or without complying with the remainder of this order, will be dismissed immediately for failure to comply with this Order. Furthermore, the court will then impose further sanctions against the plaintiff, including a monetary fine, (which may be collected directly from his prison trust fund or commissary accounts), and an order directing the TDOC, if they have not already done so, to remove Harrison from the list of approved inmate

advisors and restricting his law library access to instances in which he is actually researching a case for filing on his own behalf. While the TDOC, and not this court, has the authority to control its institutions, this court has the authority to control who practices in front of it.

Plaintiff is **ORDERED** not to file any further documents in this action other than a notice of appeal filed on the form available for that purpose from the clerk's office. The clerk shall not accept for filing in this action any documents whatsoever except that notice of appeal.

Finally, the court would add that the dismissal of this action, and the setting of reasonable limits on plaintiff's litigiousness, should not be construed by WTHSF officials as an invitation to act in disregard of the constitutional rights of this or any other inmate. Just as Harrison's frivolous writ-writing does not insulate him from administrative sanctions, this court's sanctioning of Harrison does not insulate prison officials from liability for violating his clearly established rights. A copy of this order shall be delivered to the WTHSF Warden Billy Compton, and to TDOC Commissioner Christine Bradley.

**IT IS SO ORDERED.**